AO 91 (Rev. 11/11) Criminal Complaint



6/27/2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Simar Khera (312) 353-4317

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ANTHONY PRISCO

CASE NUMBER:  23-cr-00375

**UNDER SEAL**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT ONE

On or about June 15, 2023, at Oak Forest, IL, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 922(o) | did knowingly possess and transfer a machinegun, as defined in Title 26, United States Code, Section 5845(b), namely, a conversion device, also known as a "Glock switch," a part designed solely and exclusively for use in converting a weapon into a machinegun |

### COUNT TWO

On or about June 20, 2023, at Oak Forest, IL, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 922(o) | did knowingly possess and transfer a machinegun, as defined in Title 26, United States Code, Section 5845(b), namely, a conversion device, also known as a "Glock switch," a part designed solely and exclusively for use in converting a weapon into a machinegun |

## COUNT THREE

On or about June 21, 2023, at Mokena, IL, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 922(g)(1) | knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate and foreign commerce, a firearm, namely, a Rossi, Model 68, .38 caliber firearm with an obliterated serial number, which firearm had traveled in interstate and foreign commerce prior to defendant's possession of the firearm |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

*Levi M. Tinder*
_____

LEVI M. TINDER
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 27, 2023_____        _____
                                                                                *Judge's signature*

City and state: Chicago, Illinois_____        HEATHER K. MCSHAIN, U.S. Magistrate Judge
                                                                                *Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, Levi Tinder, being duly sworn, state as follows:

### **INTRODUCTION AND AFFIANT BACKGROUND**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), and have been so employed for approximately 8 years. My current responsibilities include the investigation of federal firearms offenses, including unlawful possession of firearms or ammunition by convicted felons.

2.      This affidavit is made in support of:

   a.     a criminal complaint alleging that ANTHONY PRISCO has committed the offenses of unlawful possession and transfer of a machinegun, in violation of Title 18, United States Code, Section 922(o)(1) (Counts One and Two) and unlawful possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1) (Count Three);

   b.     an application for a warrant to search the residence located at 15804 Rob Roy Drive, Oak Forest, Illinois 60452, which is a premises used by ANTHONY PRISCO to 3D print and store machineguns that he unlawfully possesses and distributes to others (as explained below), described further in Attachment A-1 (the "**Subject Premises**"), for evidence, instrumentalities, and fruits of the unlawful possession and transfer of a machinegun, in violation of Title 18, United States Code, Section 922(o)(1); unlawfully engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A); and unlawful possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1) (the "**Subject Offenses**"), described further in Attachment B-1; and

   c.     an application for a warrant to search the Apple iPhone cellular telephone used by ANTHONY PRISCO, with phone number (708) 941-9501 with service provided by Verizon Wireless, Inc.,

as described further in Attachment A-2 (the "**Subject Phone**"), for evidence, instrumentalities, and fruits described further in Attachment B-2, concerning the **Subject Offenses**.

3.       The statements in this affidavit are based on multiple sources, including but not limited to: my personal knowledge; my review of reports and documents related to this investigation; my review of video recordings related to this investigation; conversations with others who have knowledge of the events and circumstances described in this affidavit; my review of law enforcement databases; my training and experience and the training and experience of other agents with whom I work; and information provided to me by persons with knowledge regarding relevant facts.

4.       Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of securing warrants to search the **Subject Premises** and the **Subject Phone**, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe establish probable cause to believe that ANTHONY PRISCO has committed and is committing the **Subject Offenses**. I have further set forth facts that I believe establish probable cause to believe that evidence, instrumentalities, fruits, and contraband of the **Subject Offenses** are located at the **Subject Premises** and that evidence and instrumentalities of the **Subject Offenses** are located in the **Subject Phone**.

## STATEMENT OF PROBABLE CAUSE

## I.       INVESTIGATIVE SUMMARY

5.       In summary, and as set forth in more detail below, between

approximately June 15, 2023, and June 20, 2023, PRISCO sold approximately 25 Machinegun Conversion Devices ("MCDs"), commonly known as "Glock Switches," on two different occasions to a Metropolitan Area Narcotics Squad ("MANS") undercover agent (the "UC"). [1]

6.     More specifically, and as set forth in more detail below, prior to and during each transaction, the UC communicated with PRISCO, who was using the **Subject Phone**, to coordinate the transactions. Further, during one of the transactions, PRISCO met with the UC in an empty parking lot of a closed business two houses away from the **Subject Premises**. Prior to the transaction, PRISCO exited the **Subject Premises** with concealed MCDs and exchanged those MCDs for money with the UC. Following that meeting, law enforcement observed PRISCO travel back to the **Subject Premises**.

## II.    FACTS SUPPORTING PROBABLE CAUSE THAT ANTHONY PRISCO HAS COMMITTED THE SUBJECT OFFENSES

7.     As described in more detail below, on or about June 15, 2023, and June 20, 2023, PRISCO sold the UC approximately 25 MCDs. Further, as detailed below, on or about June 21, 2023, PRISCO sold the UC a Rossi model M68, .38-caliber

---

[1] Based on my training and experience, I know that Machinegun Conversion Devices can be 3D Printed using a 3D Printer, in which files are downloaded from the internet to a USB and/or micro-SD card. Once downloaded, the USB and/or micro-SD card can be inserted into the 3D Printer and the downloaded files may be printed. Once printed, the Machinegun Conversion Devices bear no serial number or any other identifying markings, making them untraceable. The Machinegun Conversion Devices can then be attached to firearms, converting semi-automatic firearms into fully automatic firearms. Based on my training and experience, I know that guns equipped with Machinegun Conversion Devices, commonly referred to as "Glock Switches," allow users to fire multiple rounds with a single trigger pull.

revolver with an obliterated serial number. These transactions were arranged via text and phone communications that PRISCO made using **Subject Phone 1**. Further, most of these transactions originated or ended at the **Subject Premises**, based on law enforcement's surveillance of PRISCO.

**A.    June 15, 2023, Transaction of 20 3D-Printed MCDs (Count One)**

8.    From on or about June 13, 2023, through June 15, 2023, the UC and PRISCO, who was using the **Subject Phone**, exchanged text messages and a phone call.[2] The phone call and text messages between the UC and PRISCO were recorded. During these communications, the UC and PRISCO arranged the purchase of 20 "switches," meaning MCDs, for on or about June 15, 2023, in the area of the **Subject Premises**.[3]

9.    The **Subject Premises** is a brick two-story single family residence building located at 15804 Rob Roy Drive in Oak Forest, Illinois. According to law

---

[2] Law enforcement identified PRISCO as the user of this phone number because, as described throughout this affidavit, the UC communicated with the user of the **Subject Phone** to arrange the MCD transactions. During each of the transactions, PRISCO arrived at the date and time arranged for the MCD transactions and proceeded to sell the UC the MCDs. In addition, based on the UC's in-person interactions with PRISCO, the UC became familiar with PRISCO'S voice and identified PRISCO as the person who used the **Subject Phone** to speak with the UC before and after the controlled purchases.

[3] At various points in this affidavit, I will offer my understanding and interpretation of certain statements, including intercepted or recorded conversations, in bracketed comments or during the description of the conversation. My understanding and/or interpretation of these conversations is based upon the contents of the conversations, the context of both prior and subsequent conversations, information received from the UC and other law enforcement officials, my knowledge derived from this investigation, and my experience and familiarity with firearms trafficking. Except as noted, the summaries of conversations contained in this affidavit that occurred in relation to the controlled purchase of MCDs represent a review of the audio and video recordings and do not represent finalized transcripts of the conversations and may not represent the entire conversation that occurred between the identified individuals.

enforcement surveillance, there are entrances to the residence on the south side, which is the garage and the side of the residence facing the southbound neighbor; the west side, which is the rear of the residence; and the east side, which is the front of the residence facing Rob Roy Drive.

10. At approximately 7:39 p.m., law enforcement surveillance observed an individual matching the description of PRISCO exit the **Subject Premises** through the front door and enter the front passenger seat of a black Honda Civic.[4] At approximately the same time, law enforcement surveillance observed an unknown white female exit the front door of the **Subject Premises** and enter the driver's seat of the black Civic. At that time, the black Civic exited the driveway and began driving southbound on Rob Roy Drive. At approximately 7:40 p.m., surveillance units observed the black Civic enter the parking lot of the agreed upon meet location at 15825 Rob Roy Drive, Oak Forest, IL, approximately four hundred feet from the **Subject Premises**.

11. At approximately 7:39 p.m., the UC, who was equipped with an audio/video recording device and driving an undercover vehicle ("UCV"), began driving toward the agreed upon parking lot. PRISCO, using the **Subject Phone**, sent the UC a text message stating he was in a black Honda Civic.

12. At approximately 7:43 p.m., the UC arrived at the agreed upon parking

---

[4] The photograph from PRISCO's Illinois Driver's License was compared with the videos taken from the UCV during the controlled purchases and surveillance during the controlled purchases. Additionally, a positive identification was made by the UC that the person pictured on PRISCO'S Illinois Driver's License was in fact the individual the UC communicated with and met in person to conduct said controlled purchases.

lot and called PRISCO on the **Subject Phone**, who advised his location in said parking lot. Once the UC located the black Civic, the UC parked directly next to the driver side. At that time, PRISCO exited the front passenger seat, approached the UCV's front driver's side window, and handed the UC a clear plastic sandwich bag containing 20 MCDs. The UC directed PRISCO to enter the UCV, at which time PRISCO walked around the UCV and entered the front passenger seat. Once inside the UCV, the UC provided PRISCO with approximately $1,400 in cash in exchange for the 20 MCDs (which, as detailed below, were later confirmed to operate as machineguns).

13. According to the UC and the audio/video recording of the encounter, PRISCO acknowledged the functionality of the machine gun conversion devices. The UC stated, "Anything to make my Glock go full auto, I love it bro." PRISCO replied, "Hell yeah, that's what's up."

14. At approximately 7:46 p.m., law enforcement surveillance observed PRISCO exit the UCV and re-enter the front passenger seat of the black Honda Civic. The black Honda Civic exited the parking lot and drove northbound onto Rob Roy Drive before turning westbound onto Jillian Drive and out of view. A short moment later, the black Honda Civic reappeared on 157th Place, driving past the surveillance vehicle. The black Honda Civic then turned southbound onto Rob Roy Drive where it entered the driveway of the **Subject Premises**. At that time, law enforcement surveillance units observed PRISCO exit the front passenger seat of the black Honda Civic and enter the **Subject Premises**, located at 15804 Rob Roy Drive.

15.     Law enforcement later determined the license plate of the black Honda Civic to be CG28121.  Per Illinois Secretary of State records, the vehicle's license plate is registered to 15804 Rob Roy Drive (the same address as the **Subject Premises**).

**B.    June 20, 2023, Transaction of 5 MCDs, a 3D Printer, a USB card, and a SD Card containing MCD Files (Count Two)**

16.     On or about June 20, 2023, PRISCO, who was using the **Subject Phone**, and the UC communicated through text messages and a phone call, which were recorded. During these communications, PRISCO, using the **Subject Phone**, agreed to meet the UC at his friend's residence located at 15208 Hillside Ave, Oak Forest, IL, and sell the UC 5 MCDs, his 3D Printer, and the USB/SD card containing the downloaded files for MCDs, which would enable the UC to 3D Print his/her own MCDs, for approximately $1,500. Before the transaction, the UC made a recorded telephone call to the **Subject Phone** and advised PRISCO s/he would be at the agreed upon residence shortly. PRISCO asked the UC if s/he would be interested in purchasing a .38 Revolver along with the aforementioned items. The UC did not possess enough government funds to purchase the .38 Revolver, and therefore advised PRISCO that the purchase of said revolver would have to be on a future date.

17.     Later that same day, at approximately 6:46 p.m., the UC drove a UCV, which was equipped with an audio/video recording device, to the area of 15208 Hillside Ave, Oak Forest, IL. Prior to the UC arriving at said address, surveillance units observed a black sedan arrive at 15208 Hillside Ave and park on the street directly in front of the residence. Surveillance units then observed PRISCO exit the front passenger seat of the black sedan and enter the front door of 15208 Hillside Ave.

At approximately 6:55 p.m., the UC arrived at 15208 Hillside Ave and reversed the UCV into the driveway. A short time later, according to surveillance, the audio/video recording, and the UC, PRISCO and an unknown individual exited the residence and approached the rear of the UCV. PRISCO was carrying the 3D Printer, later discovered to be an Ender brand printer, and placed said printer in the rear of the UCV. PRISCO then provided the UC with approximately 5 MCDs (which, as detailed below, were later confirmed to operate as machineguns), as well as a USB and SD Card. PRISCO explained the contents of the USB and SD Card, stating the "Invisi Ones" are located on the SD Card. Based on my training and experience, PRISCO was referring to MCDs called "Invisi Switches," which do not stick out of the back of the firearm. The "Invisi Switches" are flush with the back plate, concealing the MCDs from the outside view of the firearm. After receiving approximately $1,500 from the UC for the aforementioned items, PRISCO walked back into the front door of 15208 Hillside Ave. The UC exited the driveway and the area of 15208 Hillside Ave.

18. On or about June 23, 2023, I received a verbal confirmation from ATF Firearms Enforcement Officer Phillip Peters that all 25 MCDs purchased from PRISCO were deemed machineguns and functioned as machineguns, expelling more than one round at a time with my single pull of the trigger.

**C.   June 21, 2023, Transaction of a Rossi, Model M68, .38 Caliber Revolver with an Obliterated Serial Number (Count Three)**

19. On or about June 21, 2023, PRISCO, who was using the **Subject Phone**, and the UC communicated through text messages and a phone call, which were recorded. During these communications, PRISCO, using the **Subject Phone**,

agreed to meet the UC at Restaurant A, located at 9515 191st Street, Mokena, IL, and sell the UC a .38 caliber revolver for approximately $900.

20.     At approximately 6:50 p.m., the UC began travelling toward the Restaurant A parking lot and advised via transmitter that PRISCO told the UC he would be arriving in an orange vehicle. While following the UC into the parking lot, surveillance units observed an orange Mitsubishi Eclipse, bearing Illinois license plate AD76498, at a stop light at the intersection of 191st Street and South LaGrange Ave, Mokena, IL. Surveillance units identified PRISCO in the front passenger seat of said vehicle as it travelled into the parking lot of Restaurant A and parked. At approximately 6:57 p.m., the UC arrived in the parking lot and parked directly next to the above-mentioned orange Mitsubishi Eclipse. PRISCO exited the orange Mitsubishi and entered the front passenger seat of the UCV. After a short conversation, PRISCO provided the UC with the .38 caliber revolver with an obliterated serial number, and the UC provided PRISCO with approximately $900 in prerecorded government funds. At approximately 6:58 p.m., PRISCO exited the UCV and reentered the orange Mitsubishi Eclipse. At that time, the UC and the orange Mitsubishi Eclipse exited the parking lot of Restaurant A and left the area.

21.     Based on my review of PRISCO's criminal history, I know that on or about October 20, 2022, PRISCO was convicted of unlawful use of a weapon/machinegun in the Circuit Court of Cook County, Illinois and sentenced to

approximately 24 months' probation.[5] PRISCO's Cook County probation term is set to expire on or about October 18, 2024.

22.     On or about June 26, 2023, ATF Special Agent Matthew Ward conducted an examination of the Rossi, Model 68, .38 caliber firearm and determined that it was manufactured or assembled in Brazil before being imported into the United States by Interarms in Alexandria, Virginia.

**D.     June 25, 2023, Arrest of PRISCO by Oak Forest Police Department**

23.     On or about June 25, 2023, according to Oak Forest Police Department records, Oak Forest Police Officers arrested PRISCO after he was found in possession of fentanyl and a loaded Taurus firearm. PRISCO is currently detained at the Cook County Jail pending state court charges.

24.     On or about June 27, 2023, the UC tried to call the **Subject Phone** but no one answered. Moments later, the UC received a text message from the **Subject Phone** that stated, "Anthony doesn't have his phone on him rn he's in jail." The UC then received a second message that stated, "Just thought I would let you know. This is his mom he will be in there for awhile[.]"

25.     On or about November 12, 2021, PRISCO was arrested by Cicero Police Department after he was found in possession of 3 MCDs and narcotics. After his arrest, PRISCO advised that he wished to speak with law enforcement. After being

---

[5] Although PRISCO received probation as a first-time offender, this charge is a Class 2 felony and is punishable by no less than 3 years' imprisonment and up to 7 years' imprisonment, pursuant to 720 ILCS 5/24-1(b).

advised of his *Miranda* rights, PRISCO stated that both his father and his mother, Jennifer Prisco, were at home inside the **Subject Premises**. According to records from the Illinois Secretary of State, the address on Jennifer Prisco's driver's license is the **Subject Premises**.

### E. PRISCO Does Not Possess a Valid Federal Firearms License to Sell Firearms

26. Based on my training and experience, I know that federal law requires that a firearms dealer engaged in the business of dealing in firearms be licensed by ATF. According to information received from the ATF Federal Firearms Licensing Center, ANTHONY PRISCO does not possess a valid Federal Firearms License (FFL). Additionally, according to law enforcement databases, ANTHONY PRISCO does not possess a valid Illinois Firearms Owners Identification (FOID) card or Concealed Carry License (CCL).

## II. FACTS SUPPORTING PROBABLE CAUSE TO BELIEVE EVIDENCE, INSTRUMENTALITIES, AND FRUITS WILL BE FOUND IN THE SUBJECT PREMISES AND THE SUBJECT PHONE

27. During the investigation, law enforcement identified the **Subject Premises** as a location used by ANTHONY PRISCO in furtherance of his unlawful possession and dealing of firearms, specifically MCDs. As described above, law enforcement surveillance observed PRISCO exiting the front door of the **Subject Premises** before the June 15, 2023, MCD transaction, using a black Honda Civic to travel to the agreed upon meet location, and then returning to the **Subject Premises** in the same black Honda Civic before walking through the front door at the conclusion of said transaction. The black Honda Civic was registered to PRISCO's home address,

the **Subject Premises**. Additionally, during the June 20, 2023, transaction of MCDs, law enforcement surveillance observed PRISCO being dropped off in a black sedan, which matched the description of the black Honda Civic, at the agreed upon meet location, located at 15208 Hillside Ave, which is approximately 1 mile, or a 4-minute drive, from the **Subject Premises**.

28.     According to records obtained from the Cook County Court Records, the **Subject Premises** is PRISCO's current probation address.

29.     In my training and experience, in order to download the necessary files to 3D print MCDs onto a USB and/or SD card, one must use a computer in order to search for said files. Once the files are located on the internet, the files must be downloaded to and stored onto the USB and/or SD card. After the files are downloaded onto the USB and/or SD card, the USB and/or SD card can be inserted into the 3D Printer, which enables any downloaded file to be 3D Printed.  These files can be located on various websites such as, www.3dgunbuilder.com, www.defcad.com, www.odysee.com and www.Yeggi.com. During the November 12, 2021 interview with ATF agents, PRISCO admitted that he visited www.Yeggi.com to download files for Glock-type "Auto Sears."

30.     During that same interview, PRISCO provided consent to search his home, where an Ender brand 3D Printer was recovered by ATF agents. The printer seized by law enforcement was the same brand as the printer PRISO sold to the UC on or about June 20, 2023.

31.     Based on my training and experience, the training and experience of other law-enforcement members with whom I have consulted, and my experience in this investigation, I believe PRISCO stores 3D Printed Personally Manufactured Firearms (PMF'S) and 3D Printed MCDs at the **Subject Premises** before he sells them to others. On or about June 15, 2023, PRISCO sent text messages using the **Subject Phone** and advised that he possessed 16 MCDs and agreed to sell his 3D Printer along with MCDs. Ultimately, the UC purchased only 5 MCDs, along with PRISCO'S 3D Printer. Further, because law enforcement surveillance observed PRISCO re-enter the **Subject Premises** directly after the June 15, 2023, transaction, I believe PRISCO likely stores proceeds obtained from the MCD transactions in the **Subject Premises**. As such, I believe PRISCO stores evidence, instrumentalities, and fruits related to possessing and distributing firearms within the **Subject Premises**.

32.     With respect to the **Subject Phone**, as described above, PRISCO used the **Subject Phone**, both utilizing text message and voice calls, to coordinate the MCD transactions with the UC. Prior to both MCD transactions, the UC made recorded voice calls to PRISCO to the **Subject Phone**, which PRISCO answered.

33.     Based on my training and experience, the training and experience of other law-enforcement members with whom I have consulted, and my experience in this investigation, I believe PRISCO utilizes the **Subject Phone** to communicate with other individuals, as well as the UC, regarding the sale of MCDs. I believe that the **Subject Phone** will contain evidence of other purchasers of PRISCO's 3D

Printed MCDs. I believe the **Subject Phone** will also assist law enforcement in identifying any currently unknown co-conspirators.

34. In addition, based on my training and experience, I know that information stored within a cellular phone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored within a cell phone can indicate who has used or controlled the cell phone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, contacts lists, instant messaging logs, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the cell phone at a relevant time. Further, such stored electronic data can show how and when the cell phone and its related account were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cell phone access, use, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cell phone account owner.

35. Additionally, information stored within a cell phone may indicate the geographic location of the cell phone and user at a particular time (*e.g.*, location integrated into an image or video sent via email or text message to include both metadata and the physical location displayed in an image or video). Stored electronic data may also provide relevant insight into the cell phone owner's state of mind as it

relates to the offense under investigation. For example, information in the cell phone may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement). Unless this data is destroyed, by breaking the cell phone itself or by a program that deletes or over-writes the data contained within the cell phone, such data will remain stored within the cell phone indefinitely.

36.    Based on my training and experience, and the training and experience of other law enforcement officers, I know that individuals involved in criminal offenses often store telephone numbers and names or nicknames of fellow conspirators on their telephones and the telephones also reflect recent call history. Finally, individuals often use text messaging and digital photographs in furtherance of their criminal activity that are stored on cellular telephones.

37.    As such, I believe the **Subject Phone** will contain the evidence and instrumentalities of PRISCO's unlawful possession and distribution of MCDs.

## III.   SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA

38.    Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a

qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a. Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b. Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

39. In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications

software which may have been used to create the data (whether stored on hard disk drives or on external media).

40. In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

## IV. PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA

41. Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information described in Attachment A-2 so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

42. The review of electronically stored information and electronic storage media described in Attachment A-2 may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a. examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B-2;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be

seized as set forth in Attachment B-2 (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

       c.      surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B-2;

       d.      opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B-2.

## CONCLUSION

61.    For all the reasons described above, I respectfully submit that there is probable cause to believe that ANTHONY PRISCO has committed the offenses of unlawful possession or transfer of a machinegun, in violation of Title 18, United States Code, Section 922(o)(1) and unlawful possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1).

*[CONTINUED ON NEXT PAGE]*

62.     Further, based on the above information, I respectfully submit that there is probable cause to believe that evidence, instrumentalities, fruits, and contraband relating to the **Subject Offenses**, as further described in Attachments B-1, will be found in the **Subject Premises**, more particularly described in Attachment A-1, and the **Subject Phone**, more particularly described in Attachment A-2, authorizing the seizure of the items described in Attachment B-2, pursuant to the protocol described in the addendums to Attachment B-2.

FURTHER AFFIANT SAYETH NOT.

*Levi M. Tinder*

_____

Levi Tinder
Special Agent, Bureau of Alcohol, Tobacco,
Firearms & Explosives

Sworn to and affirmed by telephone the 27th day of June, 2023.

*Heather K. McShain*

_____

HEATHER K. MCSHAIN
United States Magistrate Judge